Citation Nr: 1339299 
Decision Date: 11/29/13 Archive Date: 12/13/13

DOCKET NO. 11-34 281 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Manchester, New Hampshire


THE ISSUE

Entitlement to a disability rating in excess of 50 percent for posttraumatic stress disorder (PTSD) with alcohol dependence.


REPRESENTATION

Appellant represented by: New Hampshire State Veterans Council


ATTORNEY FOR THE BOARD

M. Caylor, Associate Counsel


INTRODUCTION

The Veteran had active service in the United States Marine Corps (USMC) from July 1965 to May 1969.

This case comes before the Board of Veterans' Appeals (Board) on appeal from an April 2011 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Manchester, New Hampshire, which increased the disability rating for PTSD from 30 to 50 percent rating as of November 24, 2010. The Veteran continues to appeal for a higher rating. 

The Board has reviewed the physical claims file and the Virtual VA electronic claims file.


FINDING OF FACT

The Veteran's PTSD is manifested by no more than occupational and social impairment with reduced reliability and productivity. 


CONCLUSION OF LAW

The criteria for a disability rating in excess of 50 percent for PTSD have not been met. 38 U.S.C.A. § 1155, 5107 (West 2002); 38 C.F.R. §§ 4.3, 4.7, Diagnostic Code 9411 (2013).


REASONS AND BASES FOR FINDING AND CONCLUSION

I. Procedural Duties

VA satisfied its duty to notify the Veteran pursuant to the Veterans Claims Assistance Act of 2000 (VCAA). 38 U.S.C.A. §§5100, 5102-5103A, 5106, 5107, 5126 (West 2002 & Supp. 2012); 38 C.F.R. §§ 3.102, 3.156(a), 3.326(a) (2013). Under the VCAA, VA must assist a claimant when he or she files a complete, or substantially complete, claim for benefits. This assistance involves notifying claimants of evidence that is necessary, or would be of assistance, in substantiating their claims, and providing notice that, if service connection is awarded, a disability rating and an effective date for the award of benefits will be assigned. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b)(1); Dingess v. Nicholson, 19 Vet. App. 473, 486 (2006), aff'd, Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007). 

VA provided the Veteran notice in January 2011, prior to the initial adjudication of his claim in April 2011. The content of the notice letter fully complies with the requirements of 38 U.S.C.A. section 5103(a) and 38 C.F.R. section 3.159(b) regarding VA's duty to notify. The Veteran was notified of the evidence necessary to substantiate the claim and told that he needed to provide the names of the persons, agency, or company that had additional records to help decide his claim. He was also informed that VA would attempt to determine what additional information was needed to process his claim would schedule a VA examination if appropriate, obtain VA medical records, obtain service records, and obtain private treatment reports as indicated. As the content of the notice letter fully complies with the requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b), the Board concludes that VA satisfied its duties to notify the Veteran. 

VA also satisfied its duty to assist the Veteran in the development of his claim. 

First, VA satisfied its duty to seek relevant records. The RO associated the Veteran's service personnel records (SPRs), service treatment records (STRs), private treatment records, and VA treatment records with the claims file. The Veteran has not identified any treatment records aside from those that are already of record; therefore, the Board concludes VA has made every reasonable effort to obtain all records relevant to the Veteran's claim. 

Second, VA satisfied its duty to provide a medical examination and obtain an opinion when required. In February 2011, VA provided the Veteran with a medical examination which addressed the current severity of his PTSD. The examination is adequate, as the report shows that the examiner considered the relevant history of the Veteran's symptoms and provided a sufficiently detailed description of the disability. See Stefl v. Nicholson, 21 Vet. App. 120, 123-24 (2007); Barr v. Nicholson, 21 Vet. App. 303, 311-12 (2007) (holding that once VA undertakes the effort to provide an examination when developing a claim, even if not statutorily obligated to do so, VA must ensure that the examination provided is adequate). 

As VA satisfied its duties to notify and assist the Veteran, the Board finds there is no further action needed to comply with the provisions of 38 U.S.C.A. § 5103(a), § 5103A , or 38 C.F.R. § 3.159, and that the Veteran will not be prejudiced as a result of the Board's adjudication of his claim. See Bernard v. Brown, 4 Vet. App. 384 (1993).

II. Merits of the Claim

The Veteran contends he is entitled to a disability rating in excess of 50 percent for PTSD. 

When deciding a case, the Board must consider all evidence on both sides of an issue, base its decision on the entire record, and state the reasons or bases for any findings and conclusions on material issues of fact and law. 38 U.S.C.A. §§ 1154(a), 5107(b), 7104(a) (2013); 38 C.F.R. §§ 3.303(a), 3.304(b)(2), 3.307(b) (2013); Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). The Board must focus on the evidence necessary to substantiate a claim and what the evidence fails to show, and, in doing so, explain why any material evidence favorable to the claimant was rejected or given little weight. 38 U.S.C.A. § 7104(d)(1); Timberlake v. Gober, 14 Vet. App. 122, 129 (2000). But see Dela Cruz v. Principi, 15 Vet. App. 143, 148-149 (2001) (finding that the Board need not discuss every piece of evidence in the record).

If VA determines that a preponderance of the evidence supports a claim, or if the claim is in relative equipoise, the claimant shall prevail. 38 U.S.C.A. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49, 55-57 (1990). If a preponderance of the evidence is against a claim, the claim will be denied. Alemany v. Brown, 9 Vet. App. 518, 519 (1996) (citing Gilbert, 1 Vet. App. at 54). If there is an approximate balance of positive and negative evidence regarding any material issue, the benefit of the doubt goes to the claimant. Gilbert, 1 Vet. App. at 53-54. 

Disability evaluations are governed by VA's Schedule for Rating Disabilities (Rating Schedule). 38 U.S.C.A. § 1155; 38 C.F.R., Part 4 (2013). The percentage ratings in the Rating Schedule represent the "average impairment in earning capacity" resulting from service-connected disabilities, and residuals thereof, in civil occupations. 38 U.S.C.A. § 1155; 38 C.F.R. §§ 3.321(a), 4.1 (2013). 

When assigning a disability evaluation, the Board must consider the potential application of any applicable regulation governing VA benefits, whether or not they were raised by the veteran, as well as the entire history of the veteran's disability. 38 C.F.R. §§ 4.1, 4.2; Schafrath v. Derwinski, 1 Vet. App. 589 (1991). During an evaluation, the symptomatology of a veteran's service-connected disability is compared with criteria set forth in the Rating Schedule and a percentage rating is assessed. 38 C.F.R., Part 4. If more than one percentage rating could apply, the higher one will be assigned if the disability picture more nearly approximates the required criteria for that rating. 38 C.F.R. § 4.7. 

The evaluation of the same disability under various diagnoses, the use of manifestations not resulting from service-connected disease or injury in establishing the service-connected evaluation, and evaluation of the same manifestation under different diagnoses are to be avoided. 38 C.F.R. § 4.14. If, however, the multiple diagnostic codes each require "distinct and separate" symptomatology that does not duplicate or overlap with the symptomatology required in the other diagnostic codes, a veteran may be assessed multiple ratings. Esteban v. Brown, 6 Vet. App. 259, 262 (1994). A veteran may also be assessed multiple ratings if multiple distinct degrees of disability occurred during the relevant period. Hart v. Mansfield, 21 Vet. App. 505 (2007); Fenderson v. West, 12 Vet. App. 119 (1999). 

The Veteran's PTSD is evaluated under the general rating formula for mental illnesses. 38 C.F.R. § 4.130, Diagnostic Code 9411 (2013). Under 38 C.F.R. § 4.126(a), an evaluation of a mental disorder must consider the frequency, severity, and duration of psychiatric symptoms, the length of remissions, and the veteran's capacity for adjustment during periods of remission. The assigned rating should be based on all the evidence of record that bears on occupational and social impairment rather than solely on the examiner's assessment of the level of disability at the moment of the examination. 38 C.F.R. § 4.126(a). While the evaluation should consider the extent of social impairment, a rating should not be assigned based solely on social impairment. 38 C.F.R. § 4.126(b). 

Under the general rating formula for mental disorders, the following ratings apply. 38 C.F.R. § 4.130, Diagnostic Codes 9201-9440.

A 50 percent rating applies if the veteran has occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. Id.

A 70 percent rating applies if the veteran has occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); inability to establish and maintain effective relationships. Id.

Finally, a 100 percent rating applies if the veteran has total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. Id.

The list of symptoms within the criteria for each rating is not exhaustive, so the impact of other symptoms particular to a veteran or a disorder on occupational and social functioning should also be considered. Mauerhan v. Principi, 16 Vet. App. 436 (2002).

In addition to these criteria, the Board must consider any reported Global Assessment of Functioning ("GAF") scores, which reflect psychological, social, and occupational functioning. Carpenter v. Brown, 8 Vet. App. 240, 242 (1995). GAF scores are highly probative, as they relate directly to the veteran's level of impairment of social and industrial adaptability, as contemplated by the rating criteria for mental disorders. Massey v. Brown, 7 Vet. App. 204, 207 (1994). GAF scores do not, however, necessarily mandate a 100 percent evaluation. Vazquez-Claudio v. Shinseki, 713 F.3d 112 (Fed. Cir. 2013).

GAF scores of 61-70 indicate some mild symptoms or some difficulty in social, occupational, or school functioning, with the ability to generally function pretty well and have some meaningful personal relationships. American Psychiatric Association's Diagnostic and Statistical Manual for Mental Disorders (4th ed. 1994). GAF scores of 51-60 indicate moderate symptoms, such as a flat affect, circumstantial speech, and occasional panic attacks, or moderate difficulty in social, occupational, or school functioning, as evidenced by having few friends and having conflicts with peers or co-workers. Id. GAF scores of 41-50 indicate serious symptoms, such as suicidal ideation, severe obsessional rituals, and frequent shoplifting, or serious impairment in social, occupational, or school functioning, as evidenced by having no friends and being unable to keep a job. Id.

An April 2011 rating decision increased the rating assigned to the Veteran's service-connected PTSD from 30 to 50 percent, effective November 24, 2010. The Board therefore considers evidence submitted from November 2009 to the present date. Francisco v. Brown, 7 Vet. App. 55, 58 (1994).

In February 2011, the Veteran underwent a VA compensation examination. He reported struggling with anxiety, sadness, and alcohol cravings and was worried he was going to be laid off or fired from his full-time job of 22 years as a lead painter due to a minor infraction and damage to a truck. His drinking had increased during the prior two years due to "problems on the job," but he denied alcohol-induced blackouts or alcohol-related complications and had begun group therapy for substance abuse in July 2010. He saw a VA psychiatrist for medication management. He had been married for several decades and had two children and one grandchild, but he was in marriage counseling because he brought his frustrations home and took out his anger on his wife. He owned and operated a farm and enjoyed gardening, farming, reading, collecting antiques, and attending church. He socialized with a number of friends and with his siblings. 

Upon objective examination, he was tired-appearing but well-groomed; oriented to person, place, and time; and cooperative, with minimal eye contact and coherent and logical speech. He had no impairment of thought process or communication; delusions or hallucinations; and no memory loss or impairment. His anger and irritability were significant and he had chronic insomnia with mid-cycle awakening. 

The examiner diagnosed him as having PTSD with chronic mild to moderate symptomatology; chronic depressive disorder, not otherwise specified (NOS), secondary to undertreated PTSD, with mild to moderate symptomatology; chronic generalized anxiety disorder with moderate symptomatology; chronic alcohol abuse secondary to historically untreated or undertreated PTSD; and generalized anxiety disorder. The examiner assigned a GAF score of 65-75, with a predominance of 65.
The examiner concluded his PTSD had a moderate effect on occupational and social functioning and that his prognosis for improvement was guarded because his full-time work limited his treatment opportunities. His psychosocial functional status fluctuated from average to occasionally below average and his quality of life was fair. PTSD symptomatology caused reduced reliability and productivity because he primarily experienced disrupted sleep from a combination of re-experiencing and depressive symptomatology, which led to problems with daytime mood regulation; vulnerability to intense surges of anxiety, irritability or anger, and sadness; and daytime impaired concentration and low energy. He had moderate symptoms once a week and had not experienced sustained or significant remissions; however, his PTSD responded to medication and group therapy was helpful. His historically untreated and undertreated PTSD had led to problems with depression and alcohol misuse, as he attempted to avoid or numb out re-experiencing, hyperarousal, and depressive symptomatology by staying busy and drinking alcohol. He had no suicidal thoughts, ideas, plans, intentions, or history of suicide attempts since 2004; and no homicidal thoughts, ideas, plans, or intentions, or history of violence or assaultiveness. He had no obsessive or ritualistic behavior, panic attacks, or impaired impulse control. Concern about his employment and marriage and memories of the Vietnam War caused a significant amount of anxiety, stress, or worry. His generalized anxiety disorder compounded, aggravated, or increased his PTSD and was independently responsible for impairment in psychosocial adjustment and quality of life. He maintained personal hygiene and basic activities of daily living and executed routine responsibilities of self-care with relative ease. He had a limited but reasonable degree and quality of social relationships and recreational and leisure pursuits. 

Two weeks later, the Veteran admitted himself into a VA hospital at his substance abuse group therapist's suggestion because he was experiencing a high level of anxiety, anger, fear, and depression regarding work issues and wanted to get his thoughts together. He was seen for five days and medically cleared six days following his discharge. See February 2011 letter from VA psychiatrist. Upon admission, he reported "petty problems" at work involving his supervisor and problems with a co-worker. He became so upset and angry that he considered swallowing pills to end his life; however, he later dismissed this consideration as said "in the heat of the moment." He did not want to retire because he enjoyed painting and could do the work. Upon discharge, he was diagnosed with adjustment disorder and assigned a GAF score of 45. His risk of self-harm was very low and he had severe and persistent mental illness but no severe functional impairment.

VA treatment notes dated in 2011 suggest that he received treatment on a monthly basis and had intermittent problems at work. In March 2011, a VA psychiatrist concluded that he had problems functioning but that there were no acute risk issues or indications of suicidal or homicidal ideation and he seemed to have moved forward. His depression and mood were better; the response from his work administration had been helpful in calming him; and he had flashbacks triggered by anger at work which seemed managed with counseling. In April 2011, his depression and mood showed more worry about his job and he had some continued PTSD symptoms including startle, dreams, and hypervigilance. There was not a lot of avoidance, but there was some generalized hypergvigilance. In May 2011, his depression, mood, and PTSD had improved with medication. In June 2011, VA treatment notes show he felt he was doing better and was making moderate progress in group therapy. In July 2011, it was noted that his work stress had resolved and his alcohol consumption was better. In August 2011, it was concluded that he had some PTSD symptoms that were managed by group therapy and that his mood was overall pretty good. He had some work tension or stress but it was intermittent and he sounded assertive. In October 2011, the Veteran's condition varied. A VA psychiatrist noted that he had some increased PTSD symptoms. Later in October 2011, he reported feeling better. A VA psychiatrist concluded his PTSD and mood had improved considerably after adjusting his medication and there was considerable alcohol reduction. In November 2011, a VA psychiatrist concluded his PTSD and mood had improved and been maintained and his affect, mood, focus, and perception of situations were notably better. 

In February 2012, the Veteran's wife submitted a letter. She reported that he had been alienated from one of his brothers and his sister and had not seen or been in contact with his son for 14 years, but that his son had recently sent an email. He had a rocky relationship with his daughter, who had refused to see or talk to him for over a year. She herself had sometimes stayed at her daughter's house to get away from him, but they had gone to couples counseling. He took care of animals to give himself peace and needed to take care of them to keep himself balanced. He was moody and cranky, verbally snapped at her, held a lot inside, and got angry at the slightest provocation for no reason. He was not a social person, did not like crowds, and had very few friends over the years. 

The Board finds her competent to provide this evidence, as it is largely capable of lay observation and based on personal knowledge, and credible and gives them probative weight. Jandreau v. Nicholson, 492 F.3d 1372, 177 n.4 (Fed. Cir. 2007); Kahana v. Shinseki, 24 Vet. App. 428, 433 (2011). 

The Board finds the evidence does not warrant assigning an increased rating. 

The Veteran's PTSD does not more nearly approximate occupational and social impairment, with deficiencies in most areas, such as work, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); and an inability to establish and maintain effective relationships. 

The Veteran has occupational and social impairment with reduced reliability and productivity due to disturbances of motivation and mood and difficulty in establishing and maintaining effective work and social relationships, which is most appropriately rated as 50 percent disabling. 

The Veteran was gainfully employed during essentially the entirety of the period on appeal-he worked full-time as a painter in a leadership position and had for 22 years. He enjoyed work, was task-oriented, and felt he was good at it and needed to work to keep mentally well and balanced. While he had minor infractions at work and communication issues with his boss, he ultimately resolved the issues and maintained his full-time leadership position. He had a spat with his boss again in May 2011 but pursued mediation to resolve the issue. In August 2011, he reported some work tension or stress but it was intermittent and a VA psychiatrist found he sounded assertive. He felt his coworkers were invading his privacy, but only for a few months. His alcohol use increased when he had issues at work, but neither his suspicion nor his drinking impacted his work. Further, the Veteran worked on his farm raising animals, which he also loved to do. 

Despite reporting arguments or frustrations at home, the Veteran regularly reported that his marriage was pretty good; that he looked forward to speaking with and seeing his wife; and that his home life improved with occasional couples counseling. While his wife reported that he was estranged from his sister, son, and daughter, he reported that he socialized with his siblings, looked forward to seeing his daughter and grandchildren after his discharge from the hospital, and spoke with his son in October 2011. Further, after adjusting his medication he was also able to finish tasks at home. 

The Board acknowledges that his insight and judgment were found fair when he was admitted to the hospital in February 2011, but that finding is not echoed elsewhere in the record, as in March, July, and August 2011, his judgment and insight were adequate and he felt he was functioning well. In October 2011, he had limited insight, but later that month and in November 2011 his judgment and insight were found pretty good and his concentration and attention had improved. In addition, he had no impairment in thought process, delusions, or memory loss. 

The Board also finds the Veteran did not have obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; or an inability to establish and maintain effective relationships. See 38 C.F.R. § 4.130 (rating criteria for 70 percent rating).

The Board acknowledges that during the course of VA treatment in February 2011 the Veteran reported suicidal ideation, but he quickly recanted his statement, VA staff concluded there was minimal risk of suicide, and the record shows it was an isolated event. While he occasionally endorsed suicidal ideation, there was no plan or intent; he frequently denied having suicidal ideation; and he was regularly found to have no risk of suicide. Moreover, in May 2011 he had no thoughts of death or suicide and denied ever having tried to seriously harm himself in the past. 

The Veteran did have difficulty in adapting to stressful circumstances at work. Despite this, the Veteran remained consistently employed. 

While he had near-continuous depression during the period on appeal, he did not have near-continuous panic, and the depression did not consistently affect his ability to function independently, appropriately, and effectively, as he was able to maintain a full-time leadership position and resolve work conflicts while also raising animals on a farm throughout the entire period on appeal. 

While he did frequently report being irritable or angry for no reason, the February 2011 VA examiner found no impulse control impairment and the Veteran regularly denied violence and homicidal ideations. Further, the VA examiner found his PTSD symptomatology reduced his reliability and productivity largely because it contributed to sleep disruption and left him less capable of regulating his mood, which left him vulnerable to surges of irritability and anxiety. 

The Board also acknowledges that he had difficulties with estranged family members, but he did not have an inability to establish and maintain effective relationships, as he reported his marriage was pretty good, his friend and daughter and grandchildren visited him, and he socialized well and made jokes with hospital staff and other patients.

The Board recognizes the discrepancy between the GAF of 65-75 assigned in February 2011 by the VA examiner, the initial February 2011 GAF score of 29 upon admission into the hospital two weeks later, and the GAF score of 45 assigned upon discharge from the hospital. The Board notes, however, that the Veteran was only assigned a GAF score of 29 for a period of days, and that a GAF score of 45 is inconsistent with other contemporaneous medical evidence. While the Veteran did have serious symptoms such as suicidal ideation, he did not have severe obsessional rituals or frequent shoplifting and did not have continued serious impairment in social or occupational functioning, as he had friends and was able to keep his job following his return to work. Further, only days before assigning a GAF score of 45, a VA psychiatrist found he did not have severe functional impairment. 

The Board therefore finds that a disability rating in excess of 50 percent is not warranted at this time. 38 C.F.R. § 4.130, Diagnostic Code 9411. 

Consideration has been given to assigning a staged rating; however, at no time during the period in question has the disability warranted a higher schedular rating. Fenderson, 12 Vet. App. at 126-127; Hart, 21 Vet. App. at 511-512. As noted above, while there were discrepancies in assigned GAF scores during February 2011, for the aforementioned reasons, the Board does not find it necessary to stage the Veteran's PTSD rating during that period.

The Board also finds that the claim does not need to be referred to the Director of the VA Compensation and Pension Service for extra-schedular consideration under 38 C.F.R. § 3.321(b)(1). 

The Board must refer a claim if (1) a service-connected disability presents such an exceptional disability picture that the available schedular ratings do not reasonably describe or contemplate the severity and symptomatology of the disability, and (2) the disability picture exhibits other factors, such as marked interference with employment and frequent periods of hospitalization. Thun v. Peake, 22 Vet. App. 111, 115-116 (2008). 

In this case, the Veteran's disability picture is not exceptional or unusual. The competent objective medical evidence of record reflects that the schedular criteria contemplate the manifestations of the Veteran's service-connected PTSD, and there is no indication that the average disability would be in excess of that contemplated by the assigned 50 percent disability rating. While the record shows the Veteran was voluntarily hospitalized for five days in February 2011, it does not show frequent hospitalizations. The Veteran was otherwise gainfully employed throughout the entirety of the period on appeal and did not report missing any work for mental health reasons other than his brief February 2011 hospitalization. Accordingly, the referral of this case for extra-schedular consideration is not in order.

The Board has considered whether an inferred claim for a total disability rating based on individual unemployability (TDIU) has been raised. Rice v. Shinseki, 22 Vet. App. 447 (2009). Entitlement to TDIU is raised where a Veteran: (1) submits evidence of a medical disability; (2) makes a claim for the highest rating possible; and (3) submits evidence of unemployability. Roberson v. Principi, 251 F.3d 1378 (Fed. Cir. 2001). However, TDIU is not raised in an increased rating claim unless the Roberson requirements are met. Jackson v. Shinseki, 587 F.3d 1106 (Fed. Cir. 2009). Here, the Veteran is employed. Thus, the matter of TDIU is not raised. 


ORDER

Entitlement to an initial disability rating in excess of 50 percent for PTSD is denied.




______________________________________________
K. PARAKKAL
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs